**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Docket No. 2:20-cr-00062-NT |
| ) | |
| JOSHUA CORY FRANCES, ) | |
| ) | |
| Defendant. ) | |

**ORDER OF REVOCATION AND DETENTION**

This matter comes before the court on the Government's Ex Parte Motion for Warrant and Motion to Revoke Bail (ECF No. 110). For the reasons stated below, I **GRANT** the Government's motion to revoke and **ORDER** the Defendant detained pending the imposition of sentence.

**I. Background**

**A. Factual Background**

On October 27, 2021, the Defendant, Joshua Cory Frances, pled guilty to one count of federal program fraud, in violation of 18 U.S.C. § 666(a)(1)(A), and one count of wire fraud, in violation of 18 U.S.C. § 1343. Min. Entry ("**Rule 11 Hearing**") (ECF No. 69); Indictment (ECF No. 23). The Prosecution Version (ECF No. 67) for the offenses—which the Defendant admitted was true at the Rule 11 Hearing—reflects that between September of 2015 and August of 2016, the Defendant falsely represented himself over numerous emails as a member of law enforcement, specifically a high-ranking employee of the U.S. Department of Homeland Security ("**DHS**"), to embezzle and obtain property and benefits that he would not otherwise have been entitled to. At the time of the offenses, the Defendant worked at Maine

Medical Center as the commander of Maine Task Force One, a federally funded program offered by the Federal Emergency Management Agency to allow for more emergency medical service personnel to be stationed at specific events in Maine, such as the annual New Year's Day Lobster Dip at Old Orchard Beach. Prosecution Version 3. While it was a "task force" in name, in practice the program was not a law enforcement entity and its members were in no way law enforcement employees. Prosecution Version 3. Maine Task Force One employees did, however, have access to Law Enforcement Online ("**LEO**"), a portal that was available to all levels of law enforcement, criminal justice, and public safety communities and used to disseminate sensitive but unclassified information, including alerts. Prosecution Version 3–4. LEO offered approved users email accounts at LEO.gov, and, in 2008, the Defendant obtained such an email by falsely identifying himself as affiliated with DHS. Prosecution Version 4. In 2014, he used this LEO.gov email address to contact and purchase a Land Rover Defender from a car dealership in Vermont and benefited from national security exemptions for the car's import by lying to the dealership owner and stating that he was "with a Homeland Security chemical weapons medical unit." Prosecution Version 4–5.

In the fall of 2015, the Defendant falsely represented that Maine Task Force One was a law enforcement agency in order to get approval to participate in a program that allows excess Department of Defense property and equipment that might otherwise be destroyed to be transferred to law enforcement agencies across the country for their use. Prosecution Version 5. Through this program, and by

making further false representations through his LEO.gov email, including that he "r[a]n the specops team for US Department of Homeland Security in Portland Maine[, which was] primarily a weapons of mass destruction/hardous [sic] materials unit", the Defendant obtained a 44-foot sailing vessel (and the funds needed to transport it from California to a marina, near his home in Yarmouth, Maine), a 27-foot Boston Whaler motorboat, and two marine outboard engines, with a combined value totaling more than $5,000. Prosecution Version 5-7. These items, however, were never intended for use by Maine Task Force One; rather, the Defendant personally advertised the sailing vessel on Airbnb and used the motorboat and two engines to support his own business. Prosecution Version 5-7.

### B. Procedural Background

On June 11, 2020, a federal criminal complaint was issued against Joshua Cory Frances. Compl. (ECF No. 1). Following the Defendant's initial appearance on July 9, 2020, the magistrate judge issued an Order Setting Conditions of Release (ECF No. 16), which included a condition that "[t]he defendant must not violate federal, state, or local law while on release." In addition, the Defendant was required to provide the U.S. Probation and Pretrial Services officer with any requested financial information and to participate in and comply with the computer and internet monitoring program. Order Setting Conditions of Release 4. That order advised the Defendant that "violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for [his] arrest, a revocation of [his] release, [and] an order of detention," and warned that if he were to commit any federal felony offense while on

release, the punishment would be a consecutive term of imprisonment for not more than ten years. Order Setting Conditions of Release 4. On September 17, 2020, a grand jury indicted the Defendant on six counts: one (1) count of federal program fraud, in violation of 18 U.S.C. § 666(a)(1)(A); three counts (2-4) of wire fraud, in violation of 18 U.S.C. § 1343; one count (5) false personation, in violation of 18 U.S.C. § 912; and one count (6) of theft of government property; in violation of 18 U.S.C. § 641. Indictment. At his arraignment, the Defendant was released pursuant to the previously set conditions of release. Min. Entry (ECF No. 29). On October 27, 2021, the Defendant pled guilty to Counts 1 and 2 of the Indictment and was again continued on the previously set conditions of release. Rule 11 Hearing. Sentencing was subsequently scheduled for August 16, 2022. Notice of Rescheduled Hr'g (ECF No. 92).

Following the change of plea, the probation officer conducted a presentence investigation, which revealed that the Defendant had falsely represented himself on numerous additional occasions, further embellishing his position and connection with law enforcement to exploit others.[1] The Defendant was uncooperative with the

---

[1] The Defendant's conduct, as discussed in the Presentence Investigation Report ("**PSR**") (ECF No. 93), included: conducting numerous fraudulently-authorized and -documented purchases using Maine Medical Center funds, even after his termination, including outfitting the boats that he acquired from the Defense Logistics Agency's ("**DLA**") Law Enforcement Support Office program with accessories and purchasing a John Deere Gator; acquiring over thirty additional items through the DLA program; retitling vehicles paid for and owned by Maine Medical Center and Maine Task Force One in order to sell or keep them for his own personal use; obtaining funds from a Maine Task Force One account following his removal from its employ; acquiring law enforcement grade equipment from various businesses under the guise that he was law enforcement or military with the clout to send more agents/agencies to the business; failing to disclose the circumstances of his termination in a job application to another government agency; contacting Governor Janet Mills' office purporting to be ready to deploy as a first responder when he was, in fact, suspended from his job at the time; registering his and his wife's cars as unmarked law enforcement vehicles and thereby avoiding the payment of excise taxes and registration fees; falsely representing his personal and financial

presentence investigation, failing on multiple occasions to disclose that he still possessed items that he obtained through fraudulent means (such as the Land Rover and a motorcycle that he acquired on a trial basis based on his false representations that he was in the military), and even crafting a fake email exchange in order to avoid returning items that he was directed to give back. PSR ¶¶ 9, 9A, 22. The probation officer also reported that the Defendant had been dilatory in complying with his conditions of release and had, on two occasions, used devices that were not monitored by the computer monitoring software. PSR ¶¶ 5, 9, 9A, 9B, 9C.

In anticipation of sentencing, the Defendant attached a letter of support from Olan Johnston, dated June 21, 2022, to his sentencing memorandum. Def.'s Sentencing Mem. Ex. 6–Olan Johnston Letter (ECF No. 98-6). The Defendant subsequently provided an additional twelve letters of support by email to the Court and the Government for use at sentencing. Def.'s Exs. 1–12. A few days after the Defendant's filing, the Government filed a response that called into question the veracity of the Johnston letter and suggested it was prepared by a third-party contractor. Government's Sentencing Mem. in Resp. (ECF No. 99). On August 15, 2022, the Defendant filed a motion to withdraw the letters of support, and defense counsel filed a motion to withdraw as attorney. Def.'s Mot. to Withdraw Sentencing Exs. (ECF No. 102); Mot. to Withdraw as Counsel and to Continue Sentencing (ECF

---

circumstances to receive SNAP benefits; falsely representing that he is a doctor and has a PhD; generating fraudulent documentation of a hip disability in order to receive a workplace accommodation; and using fake names for job applications. PSR ¶¶ 6–7, 9C, 21–22, 28–29, 30, 35–39, 40–42, 69–75, 76A, 91–93.

No. 103). An ex parte hearing was held on the motions, at which time I reserved my ruling. Min. Entry (ECF No. 106–08).

### C. Motion to Revoke Bail

On September 7, 2022, the Government moved to revoke the Defendant's bail and sought a warrant for the Defendant's arrest. Government's Ex Parte Mot. for Issuance of Warrant of Arrest and Mot. to Revoke Bail ("**Mot. to Revoke Bail**") (ECF No. 110). In its motion, the Government asserts that there is probable cause to believe that the Defendant has violated his conditions of release pending sentencing by committing a federal crime while on release, specifically wire fraud and/or obstruction of justice. Mot. to Revoke Bail 2.

Attached to the Government's motion is an affidavit by Special Agent Michael L. Ryan of the U.S. Department of Homeland Security, Office of Inspector General. Aff. of Michael L. Ryan (ECF No. 110-1). The affidavit details Agent Ryan's investigation into the letters of support that the Defendant had provided in anticipation of sentencing, different versions of which were also attached as exhibits to the motion. Mot. to Revoke Bail Exs. 1–4 (ECF Nos. 110-2–110-5). Agent Ryan discovered that nine of the letters had been drafted by a third-party contractor[2] based on interviews with the signees, and, following their completion, those letters were sent to the Defendant to forward to each individual signee for their review and revision as appropriate. Aff. of Michael L. Ryan 3. Agent Ryan obtained a copy of these letters from the third-party contractor and compared them to the letters that

---

[2] A tenth letter was drafted by the signee and sent to the third-party for review.

had been submitted to the Court. Aff. of Michael L. Ryan 3. His investigation, which involved speaking with some of the individuals as well as examining the information contained in each letter, revealed that substantial and inaccurate edits had been made to the letters between the time the third-party sent them to the Defendant and when they were provided to the Court. Aff. of Michael L. Ryan 3-7. A redlined comparison of the letters was included as an exhibit attached to the motion. Mot. to Revoke Bail Ex. 3—Redline Sentencing Exhibits (ECF No. 110-4).

Upon being shown the letter that was provided to the Court under their names, two individuals told Agent Ryan that their purported letter "was not accurate." Aff. of Michael L. Ryan 4-5. One signee, a counselor, told Agent Ryan that he was "having a strong reaction" because he "do[es]n't do this type of vouching." Aff. of Michael L. Ryan 5. In cross-checking statements made in the other letters, Agent Ryan determined that some of the credentials and experiences attributed to the signees were also false. Aff. of Michael L. Ryan 5-6. For example, one letter stated that the signee was "the Director of Homeland Security for the State of Maryland," however, no such titled position exists. Aff. of Michael L. Ryan 5.

A letter purportedly signed by the Defendant's mother, which included a misspelling of her last name, stated that she has significant medical issues. Aff. of Michael L. Ryan 6. Agent Ryan contacted an individual who interacts with the Defendant's mother daily who denied she had such conditions. Aff. of Michael L. Ryan 6. Another letter claimed that the Defendant had been called to testify before Congress and had received an award from and/or an invitation to the White House,

7

however, Agent Ryan determined that no such activity occurred. Aff. of Michael L. Ryan 6. Agent Ryan's investigation also produced an email from the Defendant sent to at least one of the letter's signees giving a "gentle reminder" that if he was contacted by anyone from the Court or the Government, that the Defendant's attorney's "expert advice" was that the signees were "under no obligation to speak to them in any capacity" and that the Defendant would "appreciate if [the signees] would heed" that advice. Aff. of Michael L. Ryan 6-7.

Based on the information contained in the motion and affidavit, I granted the request for a warrant. Order (ECF Nos. 111–12). Two days later, on September 9, 2022, the Defendant was arrested and appeared before Magistrate Judge Wolf for an initial appearance, where he was temporarily detained pending a hearing on the motion to revoke bail. Order (ECF Nos. 114–15).

**D. The September 27, 2022, Bail Hearing**

On September 27, 2022, I conducted a bail revocation hearing. The procedural posture of this proceeding, and its relevant rules of procedure and applicable statutes, were murky: the Government believed, pursuant to Federal Rules of Criminal Procedure 32.1(a)(6) and (b)(1)[3] that the Court was sitting as the magistrate judge and convening to complete the probable cause and detention hearings that would

---

[3] Federal Rule of Criminal Procedure 32.1 is captioned "Revoking or Modifying Probation of Supervised Release." Rule 32.1(a)(6) provides for an initial appearance to determine whether the person should be released or detained pending further proceedings and assigns to the Defendant the burden of proving "by clear and convincing evidence that [he] will not flee or pose a danger to any other person or to the community . . . ." Rule 32.1(b)(1)(A) provides that, at a preliminary hearing on revocation, "[if] a person is in custody for violating a condition of probation or supervised release, a magistrate judge must promptly conduct a hearing to determine whether there is probable cause to believe that a violation occurred. The person may waive the hearing."

8

have been before her, to be followed by a final revocation hearing at a later date; the Defendant, however, was under the belief that this was the final hearing and that 18 U.S.C. §§ 3148 and 3143 governed. Although I was skeptical that Rule 32.1 governs motions to revoke bail, out of an abundance of caution, I provided the advice required by Rule 32.1(b)(1).

Agent Ryan testified for the Government as to the contents of his affidavit and provided information that he received from the three additional signees that he had spoken to since the filing of his affidavit. The Defendant's endocrinologist told Agent Ryan that language was added to her letter, however, she would not identify the additional statements or speak to their accuracy because of perceived HIPAA obligations. Another signee told Agent Ryan that he "had not seen," and "had not signed" the letter of support that had been provided to the Court with his name on it, and that whoever signed his letter misspelled his last name. Agent Ryan also spoke with the individual whose letter had identified him as a thirty-year veteran of the New Hampshire state police and confirmed that such statement was an inaccurate embellishment of his law enforcement career as he had not been in law enforcement for thirty years and had never been a state trooper, but rather was a local police officer and a safety inspector. The signee told Agent Ryan that he had both spoken with and sent an email to the Defendant expressing concerns about the inaccuracies.

In support of his release, the Defendant offered evidence of his medical condition—Type I diabetes—and asserted that the Androscoggin County Jail was not appropriately suited to care for him, as noted in an email from the Defendant's

9

endocrinologist where she expressed concern regarding his glucose levels after reviewing his records. Additionally, the Defendant stated that he was the primary caregiver for his two children and that he was applying to local jobs, which mitigated any risk of flight.

Counsel for both sides presented arguments, and I took this matter under advisement. On September 28, 2022, having satisfied myself that Rule 32.1 does not apply, I held a telephone conference to offer the Defendant an opportunity to add any additional evidence, since, by applying Rule 32.1, I had confused the situation. Defense counsel indicated that he had proceeded on the understanding that the September 27th proceeding had been the final hearing on the motion to revoke bail, and he had nothing additional to offer.

## II. Discussion

The Defendant had been on release pending sentencing before he was arrested on September 9, 2022. Federal Rule of Criminal Procedure 46(c) and 18 U.S.C. § 3143(a) govern release pending sentencing. Together, the two provide that there is a presumption of detention following a guilty plea or verdict unless the defendant can satisfy his burden of establishing by clear and convincing evidence that he will not flee or pose a danger to any other person or the community. *See United States v. Cain*, No. 1:16-cr-00103-JAW, 2018 WL 2470724, at *6 (D. Me. June 1, 2018) (finding that for defendants "who pleaded guilty and are awaiting sentence, the statute . . . generally requires a court to incarcerate a defendant pending the imposition of sentence"). In assessing whether to release the Defendant, section 3143 directs the

Court to consider, pursuant to 18 U.S.C. § 3142, whether there exist conditions that would reasonably assure the appearance of the defendant at future proceedings and the safety of the community. *See* 18 U.S.C. § 3142(c). I made the determination at the time the Defendant changed his plea that he met this burden by establishing that his then-existing conditions of release would reasonably assure his appearance as necessary and the safety of the community. Rule 11 Hearing.

If a convicted defendant violates a condition of his release, he is subject to a revocation of that release pursuant to 18 U.S.C. § 3148(b), which provides that:

> The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer –
>
> (1)   finds that there is –
>
>   (A)  probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>
>   (B)  clear and convincing evidence that the person has violated any other condition of release; and
>
> (2)   finds that –
>
>   (A)  based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
>   (B)   the person is unlikely to abide by any condition or combination of conditions of release.
>
> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person

11

> will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of § 3142 and may amend the conditions of release accordingly.

18 U.S.C. § 3148(b). Essentially, there are two findings that a court must make in a § 3148(b) assessment before ordering revocation and detention: (1) either probable cause that a new crime has been committed *or* clear and convincing evidence of that another condition of release has been violated; *and* (2) either an assessment of conditions to prevent flight or danger to the community *or* a determination of whether the defendant would abide by any conditions prescribed. *See United States v. Quirion*, 808 F. Supp. 2d 343, 346 (D. Me. 2011).

"The government has the initial burden" to establish probable cause of a violation under 42 U.S.C. § 3148(b)(1)(a). *United States v. Barnett*, Criminal No. 05–cr–095–01–SM, 2012 WL 6552797, at *1 (D.N.H. Dec. 14, 2012). If this first prong, regarding a new crime, is satisfied, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." *Id.* The Defendant must then "come forward with evidence indicating that this conclusion is not warranted in his case." *United States v. Pasciuti*, No. 92–1112, 1992 WL 51482, at *8 (1st Cir. March 19, 1992); *see also United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) ("In order to 'rebut' the presumption, the defendant must produce some evidence . . . ."). If "some evidence" in rebuttal is offered, "the government typically has the burden to prove by a preponderance of the evidence the requirements of § 3148(b)(2)(A)". *Barnett*, 2012 WL 6552797, at *1. However, the rebuttable presumption is irrelevant if the Defendant is unlikely to abide by any condition or combination of conditions of

12

release. *See id.*; *see also United States v. Jittaphol*, Cr. No. 21-cr-10270-MLW, 2022 WL 1463512, at *2–*3, *2 n.2 (D. Mass. Apr. 18, 2022). Although section 3148(b)(2) does not specify the standard of proof required, the Second and Fifth Circuits have held that findings made under section 3148(b)(2) may be established by a preponderance of the evidence. *United States v. Gotti*, 794 F.2d 773, 778 (2d Cir. 1986); *United States v. Aron*, 904 F.2d 221, 223–24 (5th Cir. 1990). The question of who bears that burden of proof is also unclear from the statute.[4] Ultimately, I do not need to reach the issue of who bears the burden of proving that a defendant is unlikely to abide by any condition. Regardless of whether the burden rests with the Defendant or with the Government, I would still find that the Defendant's bail should be revoked.

The Defendant argues that, because I have already assessed that there were conditions that could ameliorate any risk of flight or dangerousness in granting his

---

[4] All of the cases that indicate that it is the Government's burden under section 3148 to prove both the underlying violation and the section 3148(b)(2)(B) factors arose in the pre-trial context with the exception of *United States v. Jittaphol*, Cr. No. 21-cr-10270-MLW, 2022 WL 1463512, at *2–*3, *2 n.2 (D. Mass. Apr. 18, 2022). *Jittaphol* addressed the standard but not which side bore the burden. *Id.* The Government has argued that "it makes no sense in a post-plea bail violation proceeding to place the burden back on" it under section 3148. It cites an out-of-district decision that concluded in a post-plea violation of release context that the burden under section 3148—traditionally born by the government—shifts as it does under section 3143, and "the defendant must overcome the presumption by offering clear and convincing evidence that there are conditions that would prevent his risk of flight or danger and that he would abide by those conditions." *United States v. Newkirk*, No. CRIM.97CR4469FJSGLS, 2000 WL 374933, at *3 (N.D.N.Y. April 6, 2000). The *Newkirk* decision relies on reasoning that originated in *United States v. Carretero*, No. CR. 98-CR-418TJM, 1999 WL 1034508, at *5-6 (N.D.N.Y. Nov. 4, 1999). Although the magistrate judge's analysis in *Carretero* is somewhat persuasive, it is distinguishable in that it involved a post-plea release in a mandatory detention case under exceptional circumstances. *Id.* at *6 (a post-plea order "releasing a defendant for reasons that are exceptional is subject to revocation if those reasons cease to be exceptional"). This case was not a mandatory detention case, and I was not required to find exceptional circumstances to support release pending sentencing. Since I have been provided with no authority from this District or Circuit, and only distinguishable authority from a lower court in another Circuit, I decline to decide the question.

13

release following the entry of his guilty plea, I am thus limited to considering "whether the new information . . . specifically the findings that there was probable cause to believe that Mr. Frances changed some information in letters submitted to the court" is sufficient to alter my previous findings. I disagree that I am as constrained as the Defendant believes, and I believe I can consider any new circumstances that have arisen between the time of plea and today.

As I stated at the revocation hearing, there is probable cause to believe that, while on release, the Defendant committed a new federal crime by seeking to obstruct justice. While I acknowledge that there is no direct evidence that the Defendant edited the letters himself, the evidence allows an inference that the letters were submitted either by the Defendant or at his direction. The Defendant is the only beneficiary of the inflated claims. Further, the alterations to the letters were intended to affect my decision on sentencing by strengthening the support for the Defendant. The evidence that the Defendant attempted to falsify materials to influence my sentencing decision establishes probable cause to believe that the Defendant has committed the federal crime of obstruction, in violation of 18 U.S.C. § 1512(c), or wire fraud, in violation of 18 U.S.C. § 3143, while on release.

Additionally, I find that the Defendant will not abide by any condition or combination of conditions that I impose under 18 U.S.C. § 3148(b)(2)(b). To support this finding, I look to both the evidence that new criminal conduct has been committed and to other evidence uncovered in the presentence investigation report.

First, throughout the presentence investigation, the Defendant has displayed a brazen attitude and an alarming lack of candor. *See United States v. Patch*, 18-cr-187-SM-3, 2021 WL 1080399, at *1 (D.N.H. Mar. 1, 2021) (finding the defendant's lack of candor with probation "troubling" and that she would be unlikely to abide by conditions of release going forward (first citing *United States v. Patterson*, No. 119-cr-00230-DAD-BAM-1, Case No. 1:19-cr-00230-DAD-BAM-1, 2020 WL 6200164, at *11 n.2 (E.D. Cal. Oct. 22, 2020); and then citing *United States v. Ojo*, Criminal No. SAG-20-0369, 2020 WL 7707341, at *2 (D. Md. Dec. 29, 2020))). The probation officer's report detailed that the Defendant delayed in complying with the computer monitoring condition, and that he had violated such condition as recently as May of this year with "heavy" usage on an iPad that did not have the computer monitoring software installed. Additionally, in February, probation discovered three unreported devices in his home—one placed directly next to his bed with his name listed on the login page—that were not being monitored by the software. The Defendant also delayed in following probation's order that he obtain a mental health evaluation, taking just about nine months to complete the evaluation. He has repeatedly failed to disclose relevant assets, and he created a fraudulent email exchange to avoid returning property. There is evidence to suggest that he has used aliases in applications for jobs, presumably to avoid having any potential employer learn of this case. His obfuscation and dilatory tactics demonstrate to me that he has deliberately tried to avoid or violate his release conditions.

Next, there is the matter of timing. The Defendant's behavior occurred while he is pending sentencing on fraud charges and while he is released on conditions requiring that he not commit any new crime upon pain of additional consecutive punishment. If that isn't enough motivation to stay on the straight and narrow, nothing is.

Because I find both probable cause to believe that the Defendant has committed new criminal conduct and that he is unlikely to abide by his conditions of release, under section 3148 there is no discretion remaining.[5] The statute provides that upon these findings, a judicial officer shall enter an order of revocation and detention.

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Government's Motion to Revoke Bail. The Defendant is hereby committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons serving sentences or being held in custody pending appeal. The Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the

---

[5] Because I find no reason to believe that the Defendant will obey conditions going forward, I need not make findings, under 18 U.S.C. § 3148(b)(2)(A), based on the factors set forth in section 3142(g) as to whether there are any conditions that would reasonably assure that the Defendant will not pose a danger to the safety of the community.

corrections facility shall deliver the Defendant to the United States Marshal for the purposes of an appearance in connection with a court proceeding.

SO ORDERED.

/s/ Nancy Torresen<br>United States District Judge

Dated this 7th day of October, 2022.